UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE SAMUL,

|                        | Plaintiff, | Civil Action No. 20-10597 |
|------------------------|------------|---------------------------|
|                        |            | Honorable Arthur J. Tarnow |
| v.                     |            | Magistrate Judge David R. Grand |

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

_____/

**<u>REPORT AND RECOMMENDATION ON</u>**
**<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)</u>**

Plaintiff Theodore Samul ("Samul") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 12, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Samul is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Samul's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Samul was 51 years old at the time of his application date of August 10, 2016.[1]  (Tr. 51).  At 5'7" tall, he weighed approximately 235 pounds during the relevant time period. (Tr. 213).  He completed high school, attending some special education classes, but had no additional training or schooling.  (Tr. 49, 52, 214, 221).  Previously, he worked as a laborer in a factory, but he stopped working in 2002 when he was laid off and has not worked since.  (Tr. 44-45, 213-14, 220-22).  He now alleges disability primarily as a result of ankle pain, balance difficulties because of a cyst in his brain, and borderline intellectual functioning.  (Tr. 45-46, 213, 276).

After Samul's application for SSI was denied at the initial level on December 8, 2016 (Tr. 100-03), he timely requested an administrative hearing, which was held on June 11, 2018, before ALJ Patricia McKay (Tr. 30-73).  Samul, who was represented by attorney Marc Littman, testified at the hearing, as did vocational expert ("VE") Kelly Stroker.  (*Id.*). On March 20, 2019, the ALJ issued a written decision finding that Samul is not disabled under the Act.  (Tr. 17-25).  On January 18, 2020, the Appeals Council denied review.  (Tr. 1-6).  Samul timely filed for judicial review of the final decision on March 6, 2020.  (ECF No. 1).

---

[1] Previously, Samul had applied for Disability Insurance Benefits, alleging a disability beginning on June 15, 2002.  (Tr. 77).  On October 10, 2008, ALJ Gerald Freedman issued a written decision finding that Samul was not disabled under the Act because he was capable of performing simple, unskilled, sedentary work with a sit/stand option.  (Tr. 77-87).

The Court has thoroughly reviewed the transcript in this matter, including Samul's medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Samul is not disabled under the Act.  At Step One, the ALJ found that Samul has not engaged in substantial gainful activity since August 10, 2016 (the application date).  (Tr. 19).  At Step Two, the ALJ found that he has the severe impairments of borderline intellectual functioning/mild cognitive impairment/receptive and expressive speech and language disorder.  (*Id.*).  At Step Three, the ALJ found that Samul's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 20).

The ALJ then assessed Samul's residual functional capacity ("RFC"), concluding that he is capable of performing work at all exertional levels, with the following non-exertional limitations: limited to simple, routine work; limited to low stress work, which is work that is self-paced and not at a production rate and where the job duties are not interdependent with those of coworkers; and must avoid workplace hazards, such as

dangerous moving machinery and unprotected heights (so no climbing ropes, ladders, or scaffolding).  (Tr. 21).

At Step Four, the ALJ found that Samul has no past relevant work.  (Tr. 24).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Samul is capable of performing the jobs of assembler (150,000 jobs nationally), inspector (90,000 jobs), and packager (120,000 jobs).  (Tr. 24-25).  As a result, the ALJ concluded that Samul is not disabled under the Act.  (Tr. 25).

### C.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at

512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In his motion for summary judgment, Samul argues that the ALJ erred in: (1) finding his ankle impairment non-severe; (2) failing to apply the doctrine of *res judicata* to certain findings from ALJ Freedman's 2008 decision; and (3) formulating his RFC.  (ECF No. 12, PageID.641-45).  Each of these arguments is addressed below.

#### 1.    *The ALJ Properly Found that Samul's Ankle Impairment is Not Severe*

At Step Two of the sequential analysis, the ALJ considered Samul's left ankle arthritis but found this impairment non-severe.  (Tr. 19-20).  The applicable Social Security regulations define a severe impairment as one that "significantly limits [the claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). In relevant part, basic work activities include the "abilities and aptitudes necessary to do most jobs[,]" including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]" 20 C.F.R. § 416.922(b). The claimant – not the ALJ – bears the burden of showing that he has such an impairment <u>and</u> that the impairment was severe for at least twelve consecutive months. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment … that meets the duration requirement in § 404.1509 (longer or expected to be longer than a continuous period of at least 12 months), or a combination of impairments that is severe and meets the duration requirement, then she is not disabled.").

Here, the first time Samul complained of ankle pain during the period at issue was at a visit to his primary care physician on August 31, 2017.[2] (Tr. 539-40). The doctor ordered an x-ray of his left ankle, which was negative for a fracture but showed arthritis. (Tr. 540, 571). He was referred to a podiatrist for further evaluation and treatment. (Tr. 540). In the two months that followed, Samul had four appointments with the podiatrist, who treated him with injections and different supportive devices, including an ankle brace and specialized shoes. (Tr. 425-26). As the ALJ noted, Samul reported improvement with

---

[2] In his motion for summary judgment, Samul references his "history of complaints [of ankle pain] since 1999 [which] confirms an ongoing, albeit 'of[f] and on' pathology." (ECF No. 12, PageID.642) (citing Tr. 426). Even assuming this is true, the first time he complained of ankle pain after he applied for SSI was on August 31, 2017. (Tr. 539-40). In fact, just two weeks earlier, Samul had described his ankle impairment as "controlled." (Tr. 445-46).

that treatment, and by November 2, 2017, he alleged only "occasional tenderness but not nearly as significant as previously." (Tr. 20, 425). This was the last time he saw the podiatrist. On January 19, 2018, he reported to his primary care physician that his ankle pain was better. (Tr. 529). Moreover, the ALJ also noted that, in his most recent medical examination, the July 2018 consultative examination with Nicholas Sousa, D.O., Samul did not complain of ankle pain. (Tr. 20, 577-79). He had a normal gait and no difficulty heel/toe walking or squatting. (Tr. 578). Dr. Sousa found no abnormalities with respect to the ankle and opined that Samul had no walking or standing limitations. (Tr. 581).

In summary, then, Samul first complained of ankle pain on August 31, 2017, reported improvement two months later, and by the time of the consultative examination – less than 12 months from the time he first reported pain – he did not even mention this as an ongoing problem, and Dr. Sousa found no standing or walking limitations. Thus, substantial evidence supports the ALJ's finding that Samul's ankle impairment was not severe.

### 2.  *The ALJ Was Not Bound by ALJ Freedman's 2008 Decision*

Samul next argues that the ALJ erred in failing to apply the doctrine of *res judicata* to ALJ Freedman's 2008 decision. As set forth above, in that decision, ALJ Freedman found that Samul retained the RFC to perform simple, unskilled, sedentary work with a sit/stand option. (Tr. 81). But, ALJ McKay, citing Acquiescence Rulings ("AR") 98-3(6) and AR 98-4(6), concluded that those findings were not binding on her because Samul's prior claim was for DIB, filed under Title II of the Act, and the instant case involves a claim for SSI, filed under Title XVI of the Act. (Tr. 17).

In arguing that ALJ McKay erred in reaching this conclusion, Samul relies on the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and the resulting AR issued by the Agency, AR 98-4.[3]   (ECF No. 12, PageID.643-44). However, the Sixth Circuit recently clarified *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), and its analysis in this most recent decision shows why ALJ McKay was not bound by ALJ Freedman's 2008 decision.   Specifically, in *Earley*, the Sixth Circuit declined to apply *res judicata* because:

> Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994…. Had Earley filed a second application for disability benefits for June 25, 2010 to May 15, 2012, the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds and the principles of finality that it supports. But Earley did not do that. She filed a new application for a new period of time. When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only foreclose[s] successive litigation of the very same claim.

*Id.* at 933 (internal citations and quotations omitted).

As in *Earley*, ALJ McKay's decision addresses a completely different period of time than the prior administrative decision.   In the prior case, filed in 2006, Samul applied for DIB.   The period covered in that prior application ended when Samul's insured status expired on December 31, 2007.   *See* 20 C.F.R. § 404.131(a) ("To establish a period of

---

[3] Samul also mentions AR 98-3 in his motion but does not discuss it substantively, noting only that the ALJ relied on that ruling and on AR 98-4 in her decision. (ECF No. 12, PageID.643). As the Commissioner notes, for purposes of this case, both AR 98-3 and AR 98-4 have the same effect, except that one of the rulings (AR 98-3) applies to the ALJ's vocational findings and the other (AR 98-4) applies to the ALJ's decision generally. (ECF No. 13, PageID.657 n. 3).

disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").  The period covered in the instant case begins with Samul's application date of August 10, 2016.  As the Commissioner correctly points out, there are *nine years* between one period and the other.  (ECF No. 13, PageID.658).  Thus, there was no reason for ALJ McKay to apply *res judicata* in this case, and her decision does not violate the applicable law.[4]  *See Earley*, 893 F.3d at 933 ("[H]uman health is rarely static.  Sure as we're born, we age.  Sometimes we become sick and sometimes we become better as time passes.  Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have actually litigated and resolved whether a person was disabled at some later date.") (internal quotations omitted).  Thus, this argument is without merit.

### 3.    *Substantial Evidence Supports the ALJ's RFC Finding*

Samul's last argument is that the "medical evidence of record does not support a residual functional capacity for a full range of work at all exertional levels." (ECF No. 12, PageID.644).  This argument is wholly undeveloped, however.  Indeed, Samul merely

---

[4] Rather than addressing the holding in *Earley*, Samul merely objects to the reason articulated by ALJ McKay for not applying *res judicata* in this case. (ECF No. 12, PageID.642-44).  Specifically, ALJ McKay stated that she was not bound by ALJ Freedman's 2008 decision because it "addressed disability under Title II, only, and the current application seeks disability under Title XVI[.]" (Tr. 17).  Although this reason is controversial, *see McClain v. Comm'r of Soc. Sec.*, No. 12-11172, 2013 WL 5182089, at *11 (E.D. Mich. Sept. 13, 2013), such alleged error is harmless where *Earley* makes clear that ALJ McKay was not bound by the prior decision, which covered a period ending almost nine years before the relevant period in this case.  In other words, even if for the wrong reason, ALJ McKay's conclusion that she was not bound by the prior decision was correct.  *See, e.g., Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *14 (N.D. Ohio July 30, 2020) (any error in how the ALJ's opinion was expressed was harmless where the ALJ got to the "correct end point required by the *Drummond-Earley* line of cases").

points out that, at a visit to his primary care physician on April 19, 2018, he was 53 years old, 5'7" tall, weighed 235 pounds, and had diagnoses of hypertension and diabetes. (*Id.*) (citing Tr. 526-28). He also points to the consultative examiner's finding that he had limited range of motion in his cervical and lumbar spine. (*Id.*) (citing Tr. 579). From this, he concludes that, given his "age, size, systemic issues, restricted range of motion and long standing foot and ankle issues, his capacity to perform light work [or work at a higher exertional level] is certainly at issue." (*Id.*, PageID.645). This is insufficient. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted).

Moreover, even if the Court were to address the substance of Samul's RFC argument, the evidence he discusses in his motion does not actually help his case. As a matter of law, his age is not a factor in the RFC determination. *See Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *1 (July 2, 1996) ("Age and body habitus are not factors in assessing RFC."). Similarly, the fact that he weighed 235 pounds at one point does not in itself establish any functional limitations, and Samul does not challenge the ALJ's finding that his obesity is non-severe. (Tr. 20). Without more, Samul's "systemic issues" (i.e., hypertension and diabetes) are mere diagnoses, which say nothing about their severity or functional impact. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... of course, says nothing about the severity of the condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the

11

functional limitations imposed by a condition, not the mere diagnosis of it."). The ALJ also found these impairments non-severe since they were "well-controlled with medication" – a finding that Samul does not challenge. (Tr. 20, 288, 526, 555). And, Samul's reliance on his "limited range of motion" in the cervical and lumbar spine comes from Dr. Sousa's consultative examination, but Dr. Sousa identified no RFC limitations based on these findings; indeed, he opined that Samul has no physical RFC limitations and can perform work at all exertional levels. (Tr. 580-85). Lastly, for the reasons discussed above in Section II(D)(1), Samul's "long standing foot and ankle issues" do not advance his argument; the ALJ properly found his ankle impairment non-severe, and Samul has not shown that this impairment resulted in a more limited RFC.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Samul's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 1, 2021                          s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 1, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

13